per curiam:
Hoy, luego de celebrar un proceso evidencia-rio complejo y detallado, y con el interés de garantizar la protección de la ciudadanía que descansa en la calidad de los servicios legales que reciben, nos corresponde suspender preventivamente de la abogacía al Ledo. Luis A. Ga-rrastegui Pellicia conforme a la Regla 15(f) del Reglamento del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A.
I
El licenciado Garrastegui Pellicia fue admitido al ejer-cicio de la abogacía el 24 de febrero de 1950 y prestó jura-mento como notario el 28 de febrero del mismo año. Desde *252 entonces ha ejercido la abogacía con dedicación y compromiso.
El 4 de mayo de 2005, la Sra. Edmé Castellar Velázquez presentó la queja AB-2005-107, mediante la cual alegó que el abogado de epígrafe había autorizado unas escrituras que, por sus defectos, le privaron de una propiedad que le pertenecía mediante herencia. A raíz de esta queja, comen-zamos el correspondiente procedimiento disciplinario. Como parte de dicho proceso, la Oficina de Inspección de Notarías (ODIN) presentó un Informe Preliminar sobre el Estado de la Notaría del abogado de epígrafe. En dicho informe, alegó que el licenciado Garrastegui Pellicia había abandonado su obra notarial y señaló que ésta contenía numerosas deficiencias.
Así las cosas, el licenciado Garrastegui Pellicia compa-reció por conducto de su representación legal y solicitó la conversión del procedimiento disciplinario a uno de incapa-cidad mental, según dispone nuestra Regla 15, supra. Tras varios incidentes procesales, ordenamos la conversión del procedimiento. Además, nombramos a la Hon. Crisanta González Seda como Comisionada Especial para que reci-biera prueba sobre la capacidad mental o emocional del licenciado Garrastegui Pellicia.
Conforme al procedimiento dispuesto en la Regla 15, supra, se designaron tres peritos psiquiatras y se recibió la prueba pertinente. Aunque se estableció un plan de trabajo para las correspondientes evaluaciones con los peritos, éste no se pudo cumplir por la incomparecencia inicial del licen-ciado Garrastegui Pellicia.
El tracto procesal se complicó cuando la ODIN compa-reció ante la Comisionada Especial y notificó que en el Tribunal Municipal de Lares existía un caso incoado por el Departamento de la Familia contra los hijos del licenciado Garrastegui Pellicia por éstos alegadamente haber aban-donado el cuidado y la alimentación de su padre. En urna Resolución emitida por dicho tribunal, el Hon. Dennis Fe- *253 liciano Crespo, juez municipal, advirtió una seria preocu-pación en cuanto a las condiciones de salud del licenciado Garrastegui Pellicia y su capacidad para ejercer la profesión. Además, expresó su preocupación porque varias personas le habían comunicado al Departamento de la Fa-milia que el empleado del licenciado Garrastegui Pellicia, el Sr. Juan Ramón Vélez Pérez, era quien estaba redac-tando y realizando todos los trámites y documentos legales a nombre del abogado. Asimismo, el Tribunal Municipal ordenó que el Departamento de la Familia comenzara un proceso de Declaración de Incapacidad a favor del licen-ciado Garrastegui Pellicia en el Tribunal Superior de Utuado.
A raíz del caso ante el Tribunal Municipal de Lares, el abogado de epígrafe fue ingresado en el Asilo Municipal de Lares hasta que el señor Vélez Pérez, empleado de Garras-tegui Pellicia, asumió el cuidado y la tutela del abogado.
Posteriormente, la ODIN presentó ante nuestra consi-deración varios documentos públicos autorizados por el li-cenciado Garrastegui Pellicia luego del incidente ante el Tribunal de Lares y solicitó que se le suspendiera de la abogacía y la notaría. Esto, pues los referidos documentos adolecían de varios defectos sustanciales que podrían afec-tar los derechos de los otorgantes.
En consecuencia, el 3 de enero de 2011 emitimos una Resolución mediante la cual ordenamos al licenciado Ga-rrastegui Pellicia que se abstuviera de realizar actos como notario. Igualmente, ordenamos a la Comisionada Especial que celebrara una vista para examinar los señalamientos que había hecho el Tribunal Municipal de Lares. Por úl-timo, le ordenamos a ODIN que ampliara su investigación para examinar las deficiencias de la obra notarial. Esta investigación culminó con la presentación de un informe completo por ODIN en donde se detallan múltiples defi-ciencias en la obra notarial, tales como la falta de sellos y notas de saca, aranceles incompletos y la carencia de datos *254 importantes sobre antecedentes, datos regístrales, cargas y advertencias especiales. Además, la ODIN informó que existían al menos siete instrumentos autorizados durante el presente año, luego de habérsele ordenado al licenciado Garrastegui Pellicia que se abstuviera de ejercer la notaría. Por otra parte, se informó que los documentos en-tregados no habían sido encuadernados. Finalmente, la ODIN nos informó que habían acudido al despacho del abo-gado y lo encontraron en un local no reportado a la ODIN, sin teléfono, agua ni electricidad y ejerciendo la notaría, incumpliendo con nuestra Resolución.
Por su parte, el licenciado Garrastegui Pellicia negó las alegaciones de dicho informe y solicitó que se le devolviera su obra notarial para subsanarla.
El proceso continuó ante la Comisionada Especial y ésta recibió los informes de los tres peritos psiquiatras que eva-luaron al licenciado Garrastegui Pellicia, conforme al pro-cedimiento establecido en la Regla 15 de nuestro Regla-mento, supra. Posteriormente, se celebró una vista para permitir que los peritos testificaran sobre sus respectivos informes. A dicha vista acudió la Oficina de la Procuradora General, el licenciado Garrastegui Pellicia, acompañado por su representante legal, y los tres peritos. Con el bene-ficio de haber examinado el expediente del caso, inclu-yendo los informes de la ODIN, la grabación de un proce-dimiento ante el Tribunal de Primera Instancia en el cual participó el abogado de epígrafe y los informes de los peri-tos, la Comisionada Especial nos sometió su informe, se-gún se le había solicitado.
En primer lugar, es preciso señalar que no hubo un con-senso entre los tres peritos psiquiatras que evaluaron al abogado de epígrafe sobre el grado de deterioro de su salud. No obstante, dos de los peritos fueron categóricos en sus testimonios al expresar que por su condición física éste no debe continuar ejerciendo la abogacía. Quien único no compartió esa conclusión fue la perito designada por la Co- *255 misionada Especial. Sin embargo, esa doctora declaró en la vista, luego de escuchar el testimonio del licenciado Ga-rrastegui Pellicia, que podía pensar en que probablemente estaba incapacitado para ejercer la profesión ... ”. (Enfasis suprimido.) Informe de la Comisionada Especial, pág. 16. La Comisionada Especial también resaltó que en un in-forme de la misma perito, ésta expresó que el peticionario no presenta deterioro en la orientación, memoria, inteli-gencia o abstracción, pero que “ ‘[s]u uso del mecanismo de omnipotencia sí produce un menoscabo de su juicio, por ejemplo, al restarle alguna importancia a la magnitud de los “errores” y al querer, con alguna arrogancia y sin temor, defenderse por modo propio y airosamente ante el Tribunal Supremo’ ”. (Enfasis suprimido.) Id., pág. 17.
Por otro lado, el perito designado por el licenciado Ga-rrastegui Pellicia concluyó que éste no puede trabajar como abogado. Fundamentó su opinión en que el abogado “ ‘ [h] a estado disfuncionando hace varios años’” y que “ ‘presentó desorganización durante la entrevista, demos-trando confabulación en su memoria, no oye bien, tiene desbalance motor, poca espontaneidad, ambivalencia y no se acordaba de las preguntas que se le hacían ... ’”. In-forme de la Comisionada Especial, pág. 19. Añadió que el licenciado Garrastegui Pellicia debe permanecer en su casa con supervisión directa para su condición física y demencial.
El tercer perito, designado por la Oficina de la Procura-dora General, recomendó que “se retire al licenciado Ga-rrastegui de la práctica ... ”. (Enfasis suprimido.)
Por otra parte, la Comisionada Especial expresó reite-radamente su preocupación, en términos ético-disciplina-rios, de que el señor Vélez Pérez, ayudante del licenciado Garrastegui Pellicia, supuestamente es quien le busca clientes para notaría y éste le paga la mitad de lo que cobra por cada documento público que autoriza. Además, la Co-misionada Especial concluyó que el abogado no realiza fun-ciones para obtener los sellos necesarios para su obra no *256 tarial, sino que deja en manos de sus clientes cumplir con ese requisito. Por otro lado, su informe resalta que el licen-ciado Garrastegui Pellicia, a pesar de haber sido quien so-licitó el presente procedimiento para determinar su inca-pacidad, ofreció tres versiones distintas a los tres peritos sobre las razones por las cuales se le ordenó entrevistarse con los médicos. Dichas explicaciones constan en los corres-pondientes informes de los psiquiatras y demuestran su incomprensión del actual procedimiento.
Es menester señalar que durante el actual proceso dis-ciplinario se presentó la queja AB-2010-306 que, al igual que la queja AB-2005-107, fue paralizada mediante Reso-lución hasta tanto se atendiese la controversia sobre la po-sible incapacidad mental del abogado de epígrafe. Por los fundamentos que anteceden, la Comisionada Especial re-comienda que separemos inmediatamente de la profesión al licenciado Garrastegui Pellicia como medida de protec-ción social. Habiendo examinado detenidamente el informe sometido por la Comisionada Especial, el expediente com-pleto de este abogado, así como los informes sometidos por los peritos psiquiatras que evaluaron al licenciado Garras-tegui Pellicia, procedemos a resolver.
II
En el ejercicio de nuestro poder inherente para regla-mentar la profesión legal, hemos tomado medidas regla-mentarias para garantizar a la ciudadanía que los miem-bros admitidos en la profesión están mentalmente aptos para ejercerla. In re Hernández Rodríguez, 181 D.P.R. 643 (2011); In re Gutiérrez Santiago, 179 D.P.R. 739 (2010). Ello busca lograr el buen funcionamiento del sistema judicial y los mejores intereses de los funcionarios y abogados que en ella laboran y postulan. íd. Esto, además, responde a que los abogados puedan realizar sus labores profesiona- *257 les competente y diligentemente, conforme a los Cánones 12 y 18 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.
Cuando la condición mental, física o emocional de un abogado no le permite ejercer cabal y adecuadamente todas las funciones y los deberes de la abogacía, corresponde su suspensión inmediata y mientras subsista su incapacidad. In re Valentín Maldonado, 178 D.P.R. 906 (2010).
Atales fines, la Regla 15 de nuestro Reglamento, supra, provee un procedimiento disciplinario especial para casos de incapacidad mental de un abogado o situaciones en las cuales se sospecha que un abogado sufre de una condición mental o emocional que le impide representar efectiva-mente a sus clientes. La referida regla, contiene un proceso donde se designa un Comisionado Especial y un panel de tres siquiatras.
En específico, la Regla 15(f) de nuestro Reglamento, supra, dispone:
Si durante los procedimientos disciplinarios contra un(a) abogad[o(a)] al amparo de la Regla 14 [de este apéndice], la parte querellada planteara la defensa de insanidad mental, el Tribunal nombrará un(a) Comisionad [o(a)] Especial para reci-bir prueba conforme al procedimiento indicado en el inciso (c). En este caso el[(la)] Procurador[(a)] General intentará demos-trar la sanidad mental de la parte querellada, con miras a continuar los procedimientos bajo los cargos que dieron base a la querella original. Si una vez rendido el informe del[(de la)] Comisionad [o(a)] Especial, el tribunal determinare que la parte querellada no está mentalmente incapacitada conforme al inciso (a) de esta regla, se ordenará la continuación de los procedimientos por la querella original y la parte querellada pagará las costas del procedimiento de evaluación siquiátrica.
Es menester añadir que la suspensión preventiva de un abogado incapacitado no es un desaforo, sino una medida de protección social. In re Hernández Rodríguez, supra; In re Costa del Moral, 164 D.P.R. 943, 945 (2005).
*258 III
A la luz de la totalidad del expediente de este procedi-miento sobre incapacidad y tras analizar detenidamente los informes correspondientes, acogemos las recomendacio-nes de la Comisionada Especial, Hon. Crisanta González Seda. El abogado de epígrafe se ha desempeñado en esta honrosa profesión por más de medio siglo. No obstante, y a pesar de que nuestra determinación no constituye un des-aforo, nos vemos obligados a separar al Ledo. Luis A. Ga-rrastegui Pellicia de la abogacía y de la notaría inmediata e indefinidamente para proteger a sus clientes. De la misma forma que el licenciado Garrastegui Pellicia ha de-dicado su vida a defender los derechos de sus clientes, nos corresponde ahora velar por el trámite diligente de las cau-sas de quienes visitan un profesional del Derecho en bús-queda de justicia.
Asimismo, se impone al abogado el deber de notificar a todos sus clientes de su inhabilidad para continuar repre-sentándolos, devolverles cualesquiera honorarios recibidos por trabajos no realizados e informar oportunamente de su suspensión a los foros judiciales y administrativos. Ade-más, tiene la obligación de certificar ante este Tribunal el cumplimiento con lo anterior dentro de un término de treinta días.
Por último, se le ordena al Alguacil de este Tribunal que incaute el sello y la obra notarial del Ledo. Luis A. Garras-tegui Pellicia y los entregue a la Directora de la ODIN para la correspondiente investigación e informe.

Se dictará Sentencia de conformidad.